Dkake, Oh. J.,
delivered the opinion of the court :■
In this case the material part of the claimant’s petition is as follows:
“The claimant, Daniel F. Thomas, respectfully shows to your. Honorable Court, that heretofore, to wit, on the fifteenth day of August, 1862, he enlisted at a corporal of Company “L,” 1st Arkansas Cavalry, in the volunteer service of the United States,, and had in such service a bay horse of his own of the value of one hundred dollars; that afterward, to wit, on the fifteenth day of September, 1863, as Cassville, Missouri, a rope had been put up in camp for the purpose of hitching horses to ; that the said horse was properly and carefully hitched thereto; that the-claimant went to bed leaving the said horse hitched as aforesaid; that about daybreak the claimant went out to the hitching rope and his said bay horse was gone and has never been recovered; that the claimant has received no pay for the use- and risk of the said horse after the loss thereof; and that the-said horse was well worth the sum of one hundred dollars at the time when it was taken into service; that the said loss was-without any fault or negligence on the part of the claimant,, aud resulted from the exigency of the service; that this claim is made under an act of Congress, entitled, “An act to amend an act entitled ‘An act to provide for the. payment of horses, and other property lost or destroyed in the military service of the United States,’ approved March third, eighteen hundred and forty-nine,” approved June 22,1874; that this claim was, prior to the 1st day of January, 1876, to wit, on the 21st day of June, 1875, presented to the Third Auditor of the Treasury,, who has not acted on the same; and that no other action has been had on this claim in Congress or by any of the departments.”
*524 The defendants move to dismiss the petition, on the ground that this court has not jurisdiction of the claim.
We shall not pass upon this motion in its application to the particular facts alleged in the petition, but consider it with reference to the general question whether we have jurisdiction of any claim by a soldier for the value of a horse taken by him into the military service of the United States. If we sustain the motion, that is the end of the case here; but if we overrule it, and affirm our jurisdiction of cases of this description, then a demurrer to the petition would present for our decision the question of the sufficiency of the facts alleged to authorize further proceedings.
On the 3d of March, 1819, was passed “An act to provide for the payment of horses and other property lost or destroyed in the military service of the United States” (9 Stat. L., 414), the first section of which provides “than any mounted militia-man, volunteer, ranger, or cavalry, engaged in the military service of the United States, since the 18th of June, 1812, or who shall hereafter be in said service, and has sustained, or shall sustain, damage without any fault or negligence on his part, while in said service, by the loss of a horse” in any one of the eight or nine different cases in that section specified, “shall be allowed and paid the value thereof, not to exceed two hundred dollars.”
For the present purpose it is not necessary to refer to the cases specifically described in that section; for the claimant’s counsel not only admitted on the argument that the case does not come under any provision of that section, but the petition avers a right of action under another statute; which we will now refer to.
On the22d of June, 1874 (18 Stat. L., 193, ch. 395, and Supplement to Rev. Stat., 84), Congress amended the act above referred to, by an act in the following terms:
“That the first section of the act of March third, eighteen •hundred and forty-nine, providing for the payment for horses and equipments lost by officers or enlisted men in the military service shall not be construed to deny payment co such officers or enlisted men for horses which may have been purchased by them in States in insurrection; and payment in ariy case shall not be refused where the loss resulted from any exigency or necessity of the military service, unless it was caused by the fault or negligence of such officers or enlisted men.
*525 “Sec. 2. That no claims under said section or this amendment thereto shall be considered unless presented prior to the first day of January, eighteen hundred and seventy-six.”
This act, it will be observed, was approved on the same day as that which declared what should be the Revised Statutes of the United States.
In section 3482 of the Revised Statutes is found the first section of the act of March 3, 1849. It would, therefore, seem, at first-sight, that two acts on the same subject, but different in. terms, were passed by Congress on the same day. If such were the fact, and Congress prescribed no rule of construction applicable to such a case, we might be somewhat embarrassed to frame one which would be satisfactory to all ; but such a rule is prescribed in section 5C01 of the Revised Statutes, as follows:
“ The enactment of the said revision is not to affect or repeal any act of Congress passed since the 1st day of December, one thousand eight hundred and seventy-three, and all acts passed since that date are to have full effect as if passed after the enactment of this revision, and so far as such acts vary from or conflict- with any provision contained in said revision, they are to have effect as subsequent statutes, and as repealing any portion of the revision inconsistent therewith.”
In our opinion the meaning of this section is to give the act of 1874 the effect of amending section 3482 of the Revised Statutes, so as practically to do away with the specifications therein contained of cases in which compensation for the loss of a horse by an enlisted man may be allowed and paid, and to authorize such allowance and payment “in any case where the loss resulted from any exigency or necessity of the military service.”
The words “ unless it was caused by the fault or negligence of such officers or enlisted men” cannot be considered as intended to mean just what they express, for that would be equivalent to saying that aloss might be caused at once by “ an exigency or necessity of the military service,” and by “the fault or negligence of the officers or enlisted men.” The terms used must be considered as intended to mean that payment might be made “in any case where the loss resulted from any exigency or necessity of the military service ” without “fault or negligenceof such officers or enlisted men.” This was, in effect, the language of the act of 1849, in regard to “fault or negligence,” and we have no doubt of the intention of Congress to convey the same idea in the act of 1874.
*526 We therefore conclude that the act of 1874 was meant to do ■away with the limited specification of cases in the act of 1849, and to open the way for the payment of losses of horses ‘‘in ■tony case where,” Avithout fault or negligence of the officer 'or •enlisted man, “the loss resulted from cony exigency or necessity of the military service.”
So far, then, as this point is concerned, we have no doubt of the jurisdiction of this court of any claim for any such loss, unless there be found some other statutory provision limiting our capacity in that regard; for the very first grant of jurisdiction to us, in the act originally establishing this court, and ever since continued in existence, and now embodied in section 1059 of the .Bevised Statutes, is of “all claims founded upon any law of Congress.” If the present claim has any substantial existence, it is founded upon a law of Congress, and our primo facie jurisdiction of it, therefore, cannot be questioned.
But it is claimed on the part of the defendants that sections 3 and 4 of the act of 1849 gave jurisdiction of claims of this description to the Third Auditor, and authorized him to “adjust” them, and characterized his adjustments as “ adjudications ” and “judgments”; and therefore this court may not take jurisdiction of them.
Whatever bearing those sections might haATe on this case if they were still in force, AAre need not stop to consider; for they are not to be found in the Bevised Statutes, and are therefore no longer in existence; for section 5596 of the revision declares that “all acts of Congress passed prior to the 1st day of December, 1873, any portion of which is embraced in any section of said reAdsion, are hereby repealed, and the section applicable thereto shall be in force in lieu thereof.” Portions of the act of March 3,1849, are embraced in the Be\'ised Statutes, and therefore, under this section, the whole of that act, except so much as is embraced in the revision, is repealed.
True, section 277 of the revision, in defining the powers of the Third Auditor, says that he “shall receive and examine,” •among other things, “all accounts for compensation for the loss of horses and equipments of officers and enlisted men in the military service of the United States”; but this power is given to him simply as an accounting officer, just as it is given as to any other account mentioned in that section; and it does not /refer this class of accounts to him to “ adjust,” and his decisions *527 thereon are no longer characterized as “ adjudications” or “judgments.” On the contrary, the section goes on to provide in this case, as it does in all the other eases therein specified, that “after the examination of such accounts, he shall certify the balances and shall transmit such accounts, with all the vouchers and papers and the certificates, to the Second Comptroller for his decision thereon.”
This definition of his duties in regard to this class of cases can have no effect to oust the jurisdiction of this court of a •claim of this description, any more than would any other statutory reference to an accounting officer of any other account. If we should rule otherwise, it would presently be difficult to find any sort of account of which this court could take jurisdiction ; for hardly any one could be named, of which it could not be said that some accounting officer had the power to examine it and certify the balance. And moreover a claimant here has a legal right to a definitive adjudication of his claim,- and our power to afford that cannot be considered as interfered with by anything short of a lodgment of the power of definitive adjudication in some other tribunal or officer; which, it is needless to say, is not, as to a claim of this kind, in the Third Auditor.
But it was further contended by the defendants that, as the second section of the act of 1874 declares “that no claims under said section [that is, section 1 of the act of 1849], or this amendment thereto, shall be considered unless presented prior to the 1st day of January, 1876”, and as this claim was not so presented, the' court has no jurisdiction.
This point is disposed of by an amendment of the petition, allowed by the court, averring that the claim was presented to the Third Auditor on the 21st June, 1875; unless it should be considered that the presentation there required was a presentation to this court. But we do not understand that to be the intent of that section. To us it seems quite clear that, when the claim was presented to the Third Auditor, the requirement of that section was fully met. So to speak, that kept the claim alive, and being still alive it may be prosecuted here.
In every view we affirm our jurisdiction of claims of this kind. Whether the claimant has a case falling within that jurisdiction, -we leave for future decision whenever the case shall be properly .brought before us.
The motion to dismiss the petition is overruled.