DowNey, Judge,
delivered the opinion of the court.
The claimant, in his petition, asks reimbursement for the loss of his horse under section 3482, Revised Statutes, as. amended by the act of June 22, 1874, and in his motion-therefor asks judgment on the authority of Hardie v. United States, 39 C. Cls., 250. The view we take of the case renders, unnecessary any discussion of the facts of the case, but requires consideration of the law, and to that end reference, to and quotation of several statutes is necessary.
The first section of the act of March 3, 1849, 9 Stat., 414, is incorporated in the Revised Statutes as section 3482, and is as follows:
“ Sec. 3482. Any field, or staff, or other officer, mounted militiaman, volunteer, ranger, or cavalryman, engaged in the military service of the United States, who sustains damage without fault or negligence on his part while in the service by the loss of a horse in battle, or by the loss of a horse wounded in battle, which dies of the wound, or which, being so wounded, is abandoned by order of his officer and lost, or who sustains damage by the loss of any horse by death or abandonment because of the unavoidable dangers of the sea, when on board a United States transport vessel, or because the United States fails to supply transportation for the horse, and the owner is compelled by the order of his commanding officer to embark and leave him, or in consequence of the United States failing to supply sufficient forage, or because the rider is dismounted and separated from his horse and ordered to do duty on foot at a station *3 detached from his horse, or when the officer in the immediate command orders the horse turned out to graze in the woods, prairies,_ or commons, because the United States fails to supply sufficient forage, and the loss is consequent thereon, or for the loss of necessary equipage, in consequence of the loss of his horse, shall be allowed and paid the value thereof, not to exceed two hundred dollars. But any payment which is made to any one for the use and risk, or for forage, after the death, loss, or abandonment of his horse shall be deducted from the value thereof, unless he satisfies the paymaster at the time he makes the payment, or thereafter shows, by proof, that he was remounted, in which case the deduction shall only extend to the time he was on foot. And any payment made to any person above mentioned, on account of clothing to which he is not entitled by law, shall be deducted from the value of his horse and accouterments.”
The act of March 3, 1873, which was the legislative, executive, and judicial appropriation act for the fiscal year ending June 30, 1874, 17 Stat., 485-500, contained a provision 'that “ all claims for horses lost prior to January 1, 1872, shall be presented by the end of said fiscal year,” which was incorporated into section 3489, Revised Statutes, in the following language:
“No claims for horses lost prior to the 1st day of January, 1872, shall be audited or paid unless presented before the 30th day of June, 1874.”
The act of June 22,1874,18.Stat., 193, is as follows:
“Be it enacted hy the Senate and House of Representatives of the United States of America in Congress assembled., That the first section of the act of March third, eighteen hundred and forty-nine, providing for the payment for horses and equipments lost by officers or enlisted men in the military service shall not be construed to deny payment to such officers or enlisted men for horses which may have been purchased by them in States in insurrection; and payment in any case shall not be refused where the loss resulted from any exigency or necessity of the military service unless it was caused by the fault or negligence of such officers or enlisted men.
“ Sec. 2. That no claims under said section or this amendment thereto shall be considered unless presented prior to the first day of January, eighteen hundred and seventy-six.”
The act of January 9, 1883, 22 Stat., 401, was entitled “An act to extend the time for filing claims for horses and *4 equipment lost by officers and enlisted men in the service of the United States, and for other purposes,” and is as follows:
“Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the time for filing claims for horses and equipments lost by officers and enlisted men in the military service of the United States, which expired by limitation on the thirty-first day of December, eighteen hundred and seventy-five, be, and the same is hereby, extended to one year from and after the passage of this act; and that all such claims filed in the proper department before the passage of this act shall be deemed to have been filed in due time, and shall be considered and decided without refiling.
“ Sec. 2. That all claims arising under the act approved March third, eighteen hundred and forty-nine, entitled ‘An act to provide for the payment of horses and other property lost or destroyed in the military service of the United States," and all acts amendatory thereof, which shall not be filed in the proper department within one year from and after the passage of this act shall be forever barred, and shall not be received, considered, or audited by any department of the Government.”
The second section of the act of August 13, 1888, 25 Stats, 437, is as follows:
“Sec.2. That the limitation heretofore imposed by law on the presentation by officers or soldiers of claims for the loss of horses and equipments in the military services during the late war is hereby suspended for the period of three years.”
All of the acts from which the law of the case must be determined have been quoted, but there are others to which brief reference may be justified, since we are to consider the effect of acts quoted which do not specifically repeal former acts but limit rights thereunder.
The first act was that of May 12, 1796, 1 Stat., 463, which provided for loss of horses killed in battle only and carried a limitation. The act of July 5, 1797, 1 Stat., 527, continued this first act in force for an additional period. The act of April 9, 1816, 3 Stat., 261, was applicable to “the late war with Great Britain,” and was in part along lines similar to the act of 1849. It was provided therein that no claim thereunder should be “ allowed or paid ” unless “ exhibited ” *5 within two years after the passage of the act. The act of March 3, 1817, 3 Stat., 397, construed one section, and in this respect “extended” “the provisions of this act and the act to which it is an amendment.” The act of April 20, 1818, 3 Stat., 466, recognized the limitation in the act of 1816 as terminating rights thereunder and transferred the jurisdiction of all claims remaining on file but unacted on at the expiration of the two-year limitation. The act of March 3, 1825, 4 Stat., 123, gave an additional right to present certain unadjusted claims under the act of 1816 during the nine months following the passage of the act. The act of February 19, 1833, 4 Stat., 613, having particular reference to campaigns against the Indians on the frontier provided for compensation for horses lost bordering closely on many of the provisions found in the act of 1849. Its operation was specifically limited to three years from and after its passage, and hence expired February 19, 1836. But before the expiration of that period another act was passed, June 30, 1834, 4 Stat., 726, providing for payment of losses in the military service in campaigns against the Indians, which more nearly approached the provisions of the act of 1849. There was no limitation as to time in this act. This was followed by the act of January 18, 1837, 5 Stat., 142, which provided for compensation for losses which had been sustained in the military service since June 18, 1812, or should thereafter be sustained in such service. It expressly repealed the acts of 1833 and 1834 referred to, and in the concluding section provided that it should remain in force until the closo of the next session of Congress. By the act of July 7, 1838, 5 Stat., 288, the act of 1837 was “ continued in force for two years from the end of the present session of Congress.” By the act of February 27, 1841, 5 Stat., 414, the act of 1837 was “ further continued in force for two years from the end of the present session of Congress.” An act approved August 23, 1842, 5 Stat., 511, amended the act of 1837 in some respects, providing, among other things, for an appeal from the third auditor, who had theretofore had exclusive jurisdiction, to the second comptroller, “ whose decision shall be conclusive.” The act of March 3, 1843, 5 Stat., 648, con *6 tinued the act of 1837 in force “ for two years from and after the end of the present session of Congress: Provided, That at the end of the last aforesaid term of two years all claims intended to be provided for by said act shall be forever barred and irrecoverable before any tribunal whatever.” By the second section of an act approved June 15, 1844, 5 Stat., 673, the act of 1837 was continued in force for two years from and after the limitation provided in the act of March 3, 1843. By the act of March 2, 1847, 9 Stat., 154, the act of 1837 and amendatory acts were continued in force for “ two years fronqand after the third day of March, 1847.” At the expiration of this period Congress seems to have concluded to let the act of 1837, five times extended and limited, die by virtue of the last limitation and passed the act of March 3, 1849, first herein quoted from.
The question is not necessarily for determination in the case under consideration, but there is found in the various statutes cited much reason for the conclusion that they were intended to grant a remedy only in cases arising out of actual hostilities, either in time of Avar or insurrection. The first act applied only to horses killed in battle. The act of 1816 applied in terms to losses occurring “ during the late war with Great Britain.” Subsequent acts applied in terms to campaigns against the Indians on the frontier. The act of 1837 did not in terms so limit its operation, but its conditions Avere conditions of war, and its second section referred to “draughted” militiamen. The conditions provided in the act of 1849, under which losses must be shown to have occurred, are almost entirely conditions applicable to war only, and such as might exist in times of peace are not to be found exclusively in such times. It was passed very soon after the close of the Mexican War. The act of March 3, 1873, R. S., 3489, put a limitation on claims for horses lost prior to January 1, 1872, which included a time of peace subsequent to the last theretofore war, but it did not attempt to broaden the laAV then in force; and if subsequent acts are worth anything as legislative construction it is noticeable that the first sentence in the first section of the act of 1874 refers to losses of horses purchased in States in insurrection, and the act of *7 1888, the last act on the subject, suspends for three years the limitation imposed on presentation of claims for horses lost “ during the late war.” We incline strongly to the opinion that the statute of 1849 was intended to apply to losses during times of actual hostilities, but, as suggested, determination of the instant case does not require determination of that question, and, that we may not unnecessarily predicate a conclusion on a question involving any element of doubt, we consider that statute as amended upon the assumption that it applies to losses in the military service in times of peace as well as war.
The first section of the act of 1874, supra, was, no doubt, intended, as said by this court in the Thomas case, 16 C. Cls., 522, “to do away with the specifications therein (sec. 3482) contained of cases in which compensation for the loss of a horse by an enlisted man may be allowed and paid and to authorize such allowance and payment in any case where the loss resulted from any exigency or necessity of the military service.”
The claim in the Thomas case was for a horse lost on the 15th of September, 1863, under such circumstances that it did mot come within any of the specifications of section 3482, and claim was made after the passage of and specifically under the act of 1874. There were, no doubt, many claims like this for horses lost during the Civil War, without fault or negligence on the part of the claimants, which could not be brought strictly within any specification of section 3482, and Congress evidently concluded to liberalize the rule in their-favor; but it is equally evident that, having done so, the legislative body concluded to allow a reasonable time for the filing of claims under the more liberal rule and make an end of them at the expiration of the period allowed; and by the second section of that act it was provided — •
“That no claim under said section or this amendment thereto shall be considered unless presented prior to the first day of January, eighteen hundred and seventy-six.”
The limitation was as specific as language could make it. It was made in terms to apply both to the first section of the act of 1849 (sec. 3482, R. S.) and to the amendatory act of *8 which it was a part (act of June 22,1874), and it specifically prohibited the consideration of any claim not presented prior to the day named. There could seem to be no doubt about the proposition that on. and after the 1st day of January, 1876, there was no right to a consideration of any claim under either of these acts unless it had been presented prior to that day. There could be no right to compensation for such a loss unless given by statute, it is not contended that such a right was given by any other statute, and the intention to absolutely bar all claims under that statute after the stipulated period is conclusively apparent. We have heard able and ingenious arguments attempting to support the contention that the bar of section 2 has only a limited application, and that there remains a substantive right under section 3482 as amended which may be enforced in this court, but we are unable to give approval to any theory which exempts this court from the prohibition against the “consideration” of any claim not “ presented ” within the period limited.
Reverting again to the Thomas case, supra, it is noted that when the question was raised as to the court’s jurisdiction and the second section of the act of 1874 cited, the court permitted the petition to be amended to show that the claim had been presented to the third auditor before the 1st day of January, 1876, and the court said:
“ This point is disposed of by an amendment of the petition, allowed by the court, averring that the claim was presented to the third auditor on the 21st June, 1875, unless it should be considered that the presentation there required was a presentation to this court. But we do not understand that to be the intent of that section. To us it seems quite clear that, when the claim was presented to the third auditor, the requirement of that section was fully met. So to speak, that kept the claim alive, and being still alive it may be prosecuted here.”
The specific holding of the court that it had jurisdiction of the claim because it had been “presented” to the third auditor within the prescribed time and thus kept alive so that it might be presented to the court thereafter indicates very clearly the view of the court as to the effect of section 2, and that it would not have entertained the case except for the *9 showing made as to the time of the presentation of the claim to the auditor.
The prohibition against the consideration of such claims remained effective, and there existed no right under the statute in question until the 9th day of January, 1883, when Congress passed the act already quoted, which was entitled “ An act to extend the time,” etc. This act refers in the first section to the expiration of the time for filing such claims on December 31, 1875; provides for the consideration without refiling of such claims as may have been filed after that day; allows a period of one year for the further filing of such claims and forever bars consideration of claims not filed within that year. It does not repeal the act of 1874 and does not attempt to retroactively create a right which did not exist during the period between December 31, 1875, and January 9,1883. It revives a right for the period of one year after its passage and gives to claims filed theretofore the same status as if filed within that year.
The Terrill case, 28 C. Cls., 465, throws some light on the view of this court at that time with reference to those restrictive statutes. This was a claim for the value of a horse and a mule lost during the Civil War and was transmitted February 23, 1889, for a finding of facts under the Bowman Act by the War Claims Committee of the House. The defendant contended that the court was without jurisdiction to consider the claim because of the last paragraph of section 3 of that act providing that this court should not have jurisdiction of any claim “ which is now barred by virtue of the provisions of any law of the United States.” The court held that a claim was not barred within the meaning of that section if at the time of the passage of the act any avenue for its settlement was then open, and cited the fact that the Bowman Act was passed during the year following the passage of the act of January 9, 1883. It was evidently the view of the court that it was the particular time of the passage of the Bowman Act with reference to this period of one year which took the case out of the prohibition of that act, and, inferentially, it must have been the view of the court that had the Bowman Act been passed either before or *10 after that year the prohibition of section 3 would have been operative.
Claimant’s reliance in this action is on the holding of this court in the Hardie case, 39 C. Cls., 250, decided February 15, 1904, and that case must therefore receive our consideration.
The Hardie case was decided 20 years after the expiration of the period of one year provided for by the act of 1883. The decision in the Thomas case was before the pas- . sage of the act of 1883 and considered only the limitation in the act of 1874. The decision in the Terrill case was after the passage of the act of 1883, but gave no consideration to the limitation in that act or the act of 1874 except in their relation to and effect on section 3 of the Bowman Act. No other case antedating the Hardie case gave consideration to the limitation put upon rights under the act of 1849 and the amendatory act of 1874. Horse cases were considered and decided during this period of 20 years and more, but they involved other questions, and if in any of them the bar of these limiting statutes might have been invoked no such question was in fact presented or decided.
The Hardie case considers the effect of the act of 1883 because of defendant’s contention that the claim in that case was barred by the provisions of that act, which, it was contended, operated as a limitation on the power and jurisdiction of this court. The court gave particular consideration to the phraseology of the act of 1883, and held that the words, “received, considered, or audited,” used in connection with the phrase “ any department of the Government,” indicated that the statute was intended “ to limit the jurisdiction of the executive department of the Government, and not to limit the jurisdiction of this court, which has been exercised under the acts of 1849 and 1874,” and that the claim having originated within six years it is within the general jurisdiction of the court, which is not affected by the act of 1883.
The decision in the Hardie case seems to us faulty, and after careful reconsideration of the whole matter we conclude that it has been a mistake to follow it, and that it can *11 not meet with our further approval. It seemed proper enough, in pursuance of the usual policy of following established precedents, to adopt the reasoning of that case to the general effect that the act of 1883 was not intended to deprive this court of its jurisdiction, but it now seems apparent on further investigation that the court in that case was in error in that, among other things, it was taking for granted or assuming the existence of a jurisdiction which at the time of and before the passage of the act of 1883 did not in fact exist at all except as to any possible claims which might have been presented to it or the proper auditor before January 1, 1876. The court said in that case.:
“ Before the passage of the act of 1883 this court had undoubted jurisdiction, as is shown by the many decisions of the court, and the question presented by the contention of counsel is, Does that jurisdiction remain notwithstanding that statute of 1883 ? ”
It is right here that the court seems to have fallen into error, and the chief error was apparently in overlooking section 2 of the act of 1874, which is not referred to in the opinion and apparently received no consideration. Section 3482 of the Revised Statutes is referred to as amended by the act of June 22,1874, with a reference as to the last act to “ I Supp. Rev. Stat., 37,” which sets out the first section of that act, but refers to the second section, without setting it out, as “ superseded,” which indicates a condition which very possibly accounts for the failure of the learned judge who wrote the opinion in that case to notice and consider the effect of that section, although he somewhat strangely quotes from that portion of the opinion in the Thomas case which discusses the effect of the first section of the act of 1874, apparently without being put upon inquiry by the part of the opinion in that case which refers to the second section. And the court was also in error in the TIardie case in referring to the many decisions of the court holding that it had undoubted jurisdiction, with reference plainly to the period preceding the passage of the act of 1883, for, aside from the Thomas case, we are unable to find any case which considered *12 the effect of the second section of the act of 1874 on the jurisdiction of the court. The court had during the years immediately preceding the passage of the act of 1883 considered and passed on many “horse claims,” but, except as stated, they were not cases which raised any question under the second section of the act of 1874.
We have already suggested our conviction that on and after January 1,1876, there was no jurisdiction in this court or any other office or tribunal to consider any claim under the act of 1849 or the amendatory act of 1874 Which had not been presented either to this court or the proper auditor before January 1,1876, and since that condition continued up to the time of the passage of the act of 1883, it is evident the court, in the Havdie case, was considering the effect of the latter act on an assumed but in fact nonexistent jurisdiction. The act of 1874 had prohibited the consideration of any claims not presented before the date stated. No other act authorized their allowance; no other act gave any right to compensation in such cases. Congress had power to take away the right it had theretofore given, and it equally had power to take the consideration of such cases out of the jurisdiction of this court. Unless thereafter a right can be found in some statute and a forum with jurisdiction to enforce it, there is neither fight nor jurisdiction in existence. Such was the situation when the act of 1883 was passed.
If it were necessary to consider the Ilardie case in all its features we might, among others, look to the construction put upon the particular phraseology quoted from the act of 1883, and possibly with disapproval, but it is sufficient to say that the construction put upon that act was, in our judgment, too narrow. Words were given a limited meaning without sufficient consideration of the general purpose of the act. An apparently mistaken assumption as to established policy seems to have been permitted to weigh heavily against what now seems to us to have been the plain legislative intent. The authorities tell us that the language of a statute should be interpreted with reference to the particular matter which the legislature appears to have had in hand and the objects which it seems to have aimed to accomplish.
*13 The legislative body in this case indicates clearly (1) its conception of the fact that the time for the assertion of any right under the statute in question had “ expired by limitation”; (2) its intention to remove the bar for the period of one year; (3) its intention to forever bar such claims at the end of that year. “ Shall not be received, considered, or audited by any department of the Government” was a broad prohibition, intended for a very apparent purpose, which was defeated by the construction put upon it in the Ilarclie case. It was consistent with established policy rather than otherwise, and it left in this court the right to “ consider ” after that year any claims which had been “ filed in the proper department” before the expiration of that year and thus kept alive, as had been held in the Thomas case. As to those not so filed, the prohibition was absolute as to “ any department ” of the Government, used, we think, not in the sense of executive department, but in the broader sense meaning any branch of the Government. There was no propriety in a prohibition against any department of the Government in the sense of executive department, when none of the executive departments save one could by any possibility have to do with such claims.
The “ policy of Congress ” is invoked in the Eardie case, as it is in the argument of the instant case, but if it was not misapprehended and misapplied when used as an argument in that case it was not so much because of the view taken of that policy as because of the possible construction to be put on the facts. In the reference in that case to a “ policy coeval with the earliest legislation,” citing the first law on the subject, passed in 1796, the court was applying to that case a policy of long standing, within which we think it could not be properly included, even under the amendment of 1874, except for the fact that the loss was due to an exigency of the service during the military occupation of Cuba, either to be regarded as in effect a part of the Spanish-American War or the suppression of an insurrection, in either event an active military service in connection with hostilities rather than in time of peace. The first act referred to was an act applicable exclusively to horses “killed in battle.” Many *14 of the acts thereafter were so limited, and we believe the act of 1849 was intended to apply only to losses in time of war or other condition amounting practically to war, and not in times of peace; and the act of 1874 did not necessarily broaden it in that respect. The Hardie case can not upon its theory as to the policy of Congress be regarded as of any force in the instant case.
It is noticeable in this connection that no case we have been able to find arising before the Spanish-American War was predicated on a loss occurring strictly in time of peace. The decided cases arising before that time and after the Civil War were all the outgrowth of that war. The Thomas and the Terrill cases so frequently cited were Civil War cases. Of the later cases regarded as precedents the Hardie case was the outgrowth of the Spanish-American War and the Cox case was distinctly a Spanish-American War case. We have not thought this feature of the cases of sufficient importance to justify a careful examination of every horse case decided by this court, making resort to the files necessary in cases decided without opinion, but a fairly thorough examination develops some pertinent facts.
After the rendition, subsequent to the Hardie and Cox cases, of judgment in a few other cases regarded as Spanish-American War cases, we find the case of Johnston, decided December 4, 1905. This was a claim for the value of two horses which it was alleged died from injuries and exposure during shipment to Cuba in October, 1901. The auditor disallowed the claim and the comptroller affirmed the disallowance under the act of March 3, 1885, because of the provision in said act that it should not apply to losses sustained “ in time of war or hostilities with the Indians ”; and holding also that there was no other law under which it could be allowed. Claimant brought his action in this court specifically claiming under the act of 1885, but invoked the principle of the wise Ethiopian’s coon trap by asking that if held not entitled under that act he be reimbursed under section 3482 as amended by the act of 1874. There was no limit as to the amount of reimbursement under the act of 1885 as *15 there was under section 3482. Claimant’s counsel contended for the allowance under the act of 1885 and against the conclusion of the comptroller as to the application of the prohibition in that act. The court, on a finding of facts but without opinion, gave judgment specifically under section 3482 as amended. The conclusion must have been that the prohibition in the act of 1885 applied, for that act had not yet been specifically held inapplicable to horses, and hence that this was a war claim. We find nothing in the records of this court throwing any further light on this question until the case of West, decided April 4, 1912, in which he was given judgment for the value of a horse lost in June, 1911, by the burning of the stables at Fort Eiley. There were allegations in that case particularly pertinent to a claim under the act of 1885, but the' claim was specifically predicated on section 3482 as amended, and we seem to be justified in the conclusion that this was the first case where an allowance was made under section 3482 for a loss in no manner connected with a war or hostilities of any kind. The policy of thus applying section 3482 is therefore of but recent origin and could be of little value as a precedent even if not so apparently erroneous. It is of course in no event the conclusive feature of this case, even though so often resorted to as an argument.
As to the policy of Congress with reference to limitations as provided in the acts of 1874 and 1883, it is a policy which had prevailed generally through the whole history of such legislation, and it is particularly apparent during the period before this court had jurisdiction of such cases and when a prohibition against a claim not filed with the auditor within a specified time was necessarily conclusive.
And there is another thought on the question of policy. The whole governmental system is upon the theory that there shall be an authority to receive and examine and allow claims against the Government without necessity for resort to the courts. It is a jurisdiction broader, in a sense, than the jurisdiction of this court, for it is not restricted by any statute of limitation. Under our present system this jurisdiction is found, and for many years has been found, in the *16 auditors, tbe accounting officers of the Government. How inconsistent to conclude that Congress intended, without interference with the substantive right, so called, to deprive claimants of the benefit of the established, efficient, prompt, and inexpensive means of having their proper claims examined and allowed and leave them with a recognized right which they must enforce in the courts alone.
Eeverting in this connection to our first proposition, if we are right in the conclusion that under the act of 1874 there was in the court no jurisdiction to allow a claim not presented to the court or the auditor before January 1, 1876, and if the court was right in the Hardie ease in applying the language of the act of 1883 to an executive department alone without any effect on the jurisdiction of this court, must we not reach the peculiar conclusion that the act of 1883 gave a right at the hands of an executive department through the proper accounting officer which could not be asserted in this court? Could the act consistently be held to apply to this court in the giving of a right clearly within its jurisdiction and not apply in the limitation put on the exercise of that right?
We have discussed the Hardie case at such length because it has been followed for several years and a number of claims allowed on its authority and because under the view we now take of the matter we must overrule that case and hold that there is in fact no authority of law for the allowance of such claims as that presented in the instant case. The doctrine of stare decisis which is so strongly urged by claimant’s counsel, can have but little, if any, bearing on a case of this kind. The reason for the rule is found in other classes of cases. We can not subscribe to the doctrine that because a number of claims against the United States have been improperly allowed the error should be perpetuated.
We have not discussed the act of 1888. Its purpose and effect are apparent. It does not affect this case, and detailed consideration would be of no value.
The claimant has no right to recovery, and his petition should therefore be, and it is, dismissed.