*261 OPINION.
Drake, Ch. J.,
delivered the opinion of the court:
This suit is brought under the Act of March 3, 1849, “ to provide for the payment of horses and other property lost or destroyed ■in the military service of the United States'” (9 Stat. L., 414, ch. 129), as amended by the Act of June 22, 1874 (18. Stat. L., 193, ch. 395, and 1 Suppl. to Eev. Stat., 84).
The claimant was enrolled on the 12th of August, 1862, in •Company L, First Eegiment of Arkansas Cavalry Volunteers, and on the 2d of October ensuing was mustered into service as a private in that company, to serve three years or during the war, and was made farrier of the company, and was mustered •out of service on the 23d of August, 1865.
His petition avers that “ he had in said service a gray horse ■of his own of the value of $90; and that on the 10th of September, 1863, while he was on duty as farrier shoeing horses in service, said horse was lost from the camp-rope, and that after-wards the said horse was retaken from the rebels and died before getting into camp.”
In Thomas,s Case (16 C. Cls. R., 522) we considered the power of this court to take jurisdiction, under the above-mentioned acts, of claims of this description, and affirmed the right of soldiers to recover here payment for losses of horses “in any •case” where, without fault or negligence on their part, “the loss’ resulted from any exigency or necessity of the military service.”
To authorize a judgment in favor of a claimant under said acts, four things must appear, namely: 1. That the claimant ■owned a horse which he took into the military service; 2. That the horse was lost; 3. That the loss resulted from an exigency ■or necessity of the military service; and 4. That the loss was without fault or negligence on the part of the claimant.
On the first point, there is no reliable evidence in this case ■that the claimant had a horse of his own in the service at all. •On the contrary, that fact is disproved to our minds in three ways: first, by the testimony of his own principal witness, that, when the claimant was mustered into the service, in 1862, he •drew a Government horse; which raises the presumption until the contrary appears, that he continued, in 1863, to use a Gov■ernment horse; second, by the fact that there is no evidence •on "the rolls of his company .that he ever had in the service a *262 private horse; and third, by the fact, that, if he had had such a horse, he would have been entitled to receive 40 cents a day for the use and risk thereof, and yet, through his whole term of service, he regularly received his own pay, and receipted for it on pay-rolls which made no mention of his having a private horse, or of his having claimed to have had one. It seems to us quite out of the range of probability that he could have had a private horse, and never have claimed the per diem, allowance on account thereof to which he was, and presumably knew that he was, lawfully entitled.
But even if it appeared that he did have a private horse,, which was lost, was the loss one that “resulted from an-exigency or necessity of the military service”? We think not. The evidence is exceedingly meagre as to how the loss occurred; but so far as it tends to prove anything on that point, it is against the probability of the loss having been of that character. With all the knowledge before him, at the time, of all the facts and circumstances connected with the disappearance of the horse, the claimant is shown to have then believed that the animal was stolen by another member of the claimant’s company, and run off to a distance, and sold; and there is no evidence tending to show that the conclusion he then arrived at was not the right one. If it was the right one, it can hardly be necessary for us to say, that a larceny by one soldier from his fellow-soldier is not “ an exigency or necessity of the military service!” By the Articles of War it is a crime, punishable in time of war by the sentence of a court-martial, and the punishment shall not be less than that provided for the like offense by the laws of the State, Territory, or district in which the offense was committed. (Revised Statutes, § 1342, Art. 58.) Such a crime is, doubtless, an incident of the military service, just as it is of the contact of men in civil life, but it does not spring from any exigency or necessity of that service. We' are not required, in order to the decision of this case, to-attempt to define the meaning, in general, of the terms u exigency or necessity,” as used in the statute in question; it is enough for the present purpose to hold, as we do, that the theft-of the claimant’s horse by one of his fellow-soldiers was not a loss contemplated by the statute; and therefore that the defendants are not liable to pay the claimant for it.
The judgment of the court is that the claimant’s petition be dismissed.