Peelde, J.,
delivered the opinion of the court:
On March 8, 1899, the claimant was appointed a rear-admiral in the United States Navy, and as such claims the pay and allowance of a brigadier-general in the United States Army from that date until June 30,1899, without any deduction for shore service. Since July 1, 1899, ho claims the pay and' allowances, except forage, of a major-general in the United States Army, less 15 per cent pay when on shore duty.
The claimant grounds his right to recover as stated on sections 7 and 13 of the act of March 3, 1899, entitled “An act to reorganize and increase the efficiency of the personnel of the Navy and Marine Corps of the United States” (chap. 413, 30 Stat. L., 1004).
Section 7 reads:
“ That the active list of the line of the Navy, as constituted by section one of this act, shall be composed of eighteen rear-admirals, seventy captains, one hundred and twelve commanders. one hundred and seventy lieutenant-commanders, three hundred lieutenants, and not more than a total of three hundred and fifty lieutenants (junior grade) and ensigns: Provided, That each rear-admiral embraced in the nine lower numbers of that grade shall receive the same pay and allowance as are now allowed a brigadier-general in the Army. Officers, after performing three years’ service in the grade of ensign, shall, after passing the examinations now required by law, be eligible to promotion to the grade of lieutenant (junior grade): Provided, That when the office of chief of bureau is filled by an officer below the rank of rear-admiral, said officer shall, while holding said office, have the rank of rear-admiral and receive the same pay and allowance as are now allowed a brigadier-general in the Anuyu And provided furtllar, That nothing contained in this section shall be construed to prevent the retirement of officers who now have the rank or relative rank of commodore, with the rank and pay of that grade: And provided further, That all sections of the Revised Stat *275 utes which, in defining the rank of officers or positions in the Navy, contain the words “the relative rank of” are hereby amended so as to read “the rank of,” but officers whose rank is so defined shall not be entitled, in virtue of their rank, to command in the line or in other staff corps. Neither shall this act be construed as changing the titles of officers in the staff corps of the Navy. No appointments shall be made of civil engineers in the Navy on the active list under section fourteen hundred and thirteen of the Revised Statutes in excess of the present number, twenty-one.”
At the time of the passage of that act there were, as we are advised, 6 rear-admirals in the 'Navy with the relative rank of major-general in the United States Army, and 10 commodores with the relative rank of brigadier-general in the Army.
By the provisions of section 7, excluding commodores from the active list of the line of the Navy, the rank or grade of commodore is.abolished and, in effect, merged into that of rear-admiral. And as the active list was, among other officers, to be composed of 18 rear-admirals, and only 6 were serving at the time of the passage of the act, there were vacancies to be filled by appointment, and in respect to certain of that grade it was provided “that each rear-admiral embraced in the 9 lower numbers of that grade shall receive the same pay and allowance as are now allowed a brigadier-general in the army. ”
As the rank of commodore was -abolished by the act, the claimant and others holding that grade were advanced by appointment, pursuant to Revised Statutes, section 1366, to the grade of rear-admiral, and in part are “embraced in the 9 lower numbers of that grade,” so that for the purpose of pay a distinction is created by the act in the grade of rear-admirals and special provision made therefor.
When the act was passed; though the relative rank of a commodore was that of a brigadier-general in the Army the pay was less, and it was largely because the officers in the Navy were paid less than the officers of corresponding rank in the Army that dissatisfaction arose. So to meet that objection in part the rear-admirals “embraced in the 9 lower numbers of that grade ” were given the pay and allowance of a brigadier-general in the Army.
Thus, biT the abolition of the rank of commodore and the advancement of those theretofore in that grade to the 9 lower numbers in the grade of rear-admiral, their pay is increased *276 from $5,000 (sea-pay) to $5,500 per annum, an increase of 10 per cent over the highest rate of pay theretofore received- by them as commodores, while for shore duty thejr received 15 per cent less pay, plus their allowance for commutation for quarters ($720), or in all $5,395 per annum, an increase of nearly 35 per cent over their shore pay ($4,000) as commodores, and as vacancies occur in the grade above the nine, those embraced in said lower numbers will according to seniority be advanced, and they will then be entitled to receive the pay and allowances, except forage, of a major-general in the Army, as provided by section 13 of said act, which reads:
“That, after June thirtieth, eighteen hundred and ninety - nine, commissioned officers of the line of the Navy and of the Medical and Pay Corps shall receive the same pay and allowances, except forage, as are or may be provided by or in pursuance of law for the officers of corresponding® rank in the Army: Provided, That such officers when on shore shall receive the allowances, but fifteen per centum less pay than •when on sea duty; but this provision shalPnot apply to warrant officers commissioned under section twelve of this act: Provided further, That when naval officers are detailed for shore duty beyond seas they shall receive the same pay and allowances as are or may be provided by or in pursuance of law for officers of the Army detailed for duty in similar places: Provided further, That naval chaplains, who do possess relative rank, shall have the rank of lieutenant in the Navy; and that all officers, including warrant officers, who have been or may be appointed to the Navy from civil life shall, on the date of appointment, be credited, for computing their pay, with five years’ service. And all provisions of law authorizing the distribution among captors of the whole or any portion of the proceeds of vessels, or any property hereafter captured, condemned as prize, or providing for the payment of bounty for the sinking or destruction of vessels of the enemy hereafter occurring in time of war, are hereby repealed: And provided further, That no provision of this act shall operate to reduce the present pay of any commissioned officer now in the Navy; and in any case in which the pay of such an officer would otherwise be reduced he shall continue to receive pay according to existing law: And provided further, That nothing in this act shall operate to increase or reduce the pay of any officer now on the retired list of the Navy.
The claimant’s contention that by virtue of the first proviso to section 7 he was entitled to the same pay and allowance as *277 a brigadier-general from the date of the approval of the act of March 3 to June 30, 1899, without any deduction for shore duty, and thereafter to the páy and allowances, except forage, of a major-general in the Army, less 15 per cent pay for shore duty, can not be sustained without holding that section 13 superseded and abrogated section 7 in respect to the pay of the rear-admirals “embraced in the 9 lower numbers of that grade.”
Both sections are part of the same act, and the first proviso to section 7 is a special provision for the class of officers there stated. There is also a special provision in the second proviso to the effect that “ when the office of chief of bureau is filled by an officer below the rank of rear-admiral said officer shall, while holding said office, have the rank of rear-admiral and receive the same pay and allowance as are now allowed á brigadier-general in the Army.”
If the claimant’s contention should prevail it is question-' able whether that provision would not also be abrogated; but whether that be correct or not the general rule is that a general provision will not repeal a special provision unless there are express words to that effect or an irreconcilable conflict in the language used.
Legislation must, in case of doubt, be viewed in the light of the historical circumstances and surroundings to ascertain the meaning of the language employed. Prior to the passage of the act the highest or sea pay of a commodore was $5,000 per annum, shore duty $4,000, and leave or waiting orders, pay $3,000. That of a rear-admiral was for sea service $6,000 per annum, shore duty $5,000, and for leave or waiting orders pay $4,000, being less pay than that of brigadier or major general in the Army, whose rank they assimilated, respectively, at the time of the passage of the act. This was in part. the mischief to be remedied.
The rear-admirals in the service when the act was passed, and those appointed thereafter in the upper 9 of that grade, became entitled, after June 30, 1899, by virtue of section 13, to $7,500 per annum, an increase over the pj-ior sea pay of rear-admirals of 25 per cent; and for shore service, 15 per cent less pay, plus their allowance for commutation for quarters ($864), making $7,239 per .annum, an increase of nearly *278 45 per cent, while of course the percentage of increase in the pay of the commodores advanced to the upper 9 of that grade will bo still greater.
What reason the Congress had for making the distinction they did in the pay of rear-admirals we do not know. It may have been based on long or distinguished services. But whatever the reason may have been our duty is to give force and effect to the language used if it can be done.
Section 13 standing alone appears broad enough to justify the claimant’s contention, but construing the two sections together as parts of the same act, and keeping in view the canon of interpretation as to the purpose' of the act and the former service, status, and pay of rear-admirals and commodores we think there is no difficulty in upholding section 7 as permanent legislation not inconsistent with the general provisions of section 13.
By the proviso to section 7 the rear-admirals “embracedin the 9 lower numbers of that grade” are segregated from the other officers there named and placed in a separate class for the purpose of fixing their pay; and special provision being made therefor section 13 must be read with that in view; and thus reading the section, we interpret it to mean that commissioned officers not otherwise specially provided for in the act “shall receive the same pay and allowances, except forage, as are or may be provided by or in pursuance of law for the officers of corresponding rank in the Army.” This construction is neither new nor novel, but is abundantly supported by authority.
Section 13 is in general terms, and the language there used does not indicate that it was the intention of the Congress to abrogate the special provision made in section 7 for the rear-admirals “ embraced in the 9 lower numbers of that grade;” and special provision having been made for them it can not be held that a subsequent general statute, much less in the same act, was intended to alter or repeal the special provision so made. (Endlich on the Interpretation of the Statutes, 223 et seq.)
“The reason and philosophy of the rule is that when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general *279 terms — or treating the subject in a general manner, and not expressly contradicting the original act — shall not be considered as intended to affect the more particular or positive previous provisions, unless it is 'absolutely necessary to give the latter act such a construction in order that its words shall have any meaning at all.” (Sedgwick, on the construction of statutory and constitutional law, 98.)
Here is a case directly in point:
“Where there are two acts or provisions, one of which is special and particular, and certainly includes the matter in question, and the other general, which, if standing alone, • would include the same matter, and thus conflict with the special act or provision, the special must be taken as intended to constitute an exception to the general act, as the legislature is not to be presumed to have intended a conflict.” (Crane v. Reader, 22 Mich., 322, 334, and the numerous authorities there cited.)
We can not attribute to the Congress the folly of having in the same act provided two rates of pay for the same officers, one a temporary rate for four months at $5,500, and thereafter a permanent rate of $7,500.
It must therefore be held that the purpose and intent of the Congress was, as expressed in the proviso, that “ each rear-admiral embraced in. the 9 lower numbers of that grade shall receive the same pay and allowance as are now allowed a brigadier-general in the Army,” and that such pay will continue so long as they remain in the 9 lower numbers of that grade.
The next question is, what deduction,' if any, should be made from the claimant’s pay while on shore dutjr, and when should such deduction begin — that is, whether from the date of the act, March 3, or after June 30, 1899?
Section 13 provides in express terms “that after June thirtieth, eighteen hundred and ninety-nine, commissioned officers of the line of the Navy and of the Medical Pay"Corps shall receive the same pay and allowances, except forage, as are or may be provided by or in pursuance of law for the officers of corresponding rank in the Army.” Hence, the proviso thereto fixing 15 per cent as the- amount to be deducted from the pay. of such officers when on shore duty did not, of course, become .operative as " to those whose pay was so fixed until after that date, i. e., until after such officers *280 became entitled to receive the pay and allowances therein provided for them.
But in respect to the rear-admirals, “ embraced in the nine lower numbers of that grade,” though their pay is elsewhere provided for, they are nevertheless included among the commissioned officers, referred to, and for that reason the proviso as to them became operative upon the passage of the act— that is, when they became entitled to receive the pay thus specially provided for them.
This construction is not only in harmony with the language of the two sections, but also with the long-established policy of the Government, continued in section 13, to pay officers in the Navy less when on shore duty than when at sea.
If the Congress had intended to except anjr of the commissioned officers referred to in section 13 from the operation of the proviso in respect to less pay for shore than for sea service they would have said so, and not having done so we can not add an exception thereto. Therefore, our conclusion is that the pay of the claimant is fixed by the proviso to section †, except that for shore service he will be entitled to “ receive the allowances, but 15 per cent less pay than when on sea duty,” as provided in said section 13.
For the reasons stated, the petition must be dismissed.
Nott, Ch. J., was not present when this case was tried and took no part in the decision.