AtioNsoN, Judge,
delivered the opinion of the court:
Plaintiff was a first lieutenant and adjutant of the Second Regiment of the United States Cavalry at Fort Walla Walla, Wash., and while there stationed he lost a sorrel mare, for which he had paid $150, through an injury received in the stables of said regiment. The mare was in the immediate charge of a soldier, who entered the stable February 15, 1889, to feed the horses, found the animal lying down in the stall; a wooden bar had been placed across the rear end of the stall, and when she attempted to rise to her feet her back struck said bar which injured her spine to such an extent that it caused her death about four months thereafter.
On March 29, 1890, the plaintiff, through his attorney, filed a claim with the Third Auditor, who, on July 8, 1890, referred it to the Second Comptroller, who, on July 31, 1891, referred it to the Secretary of War for his action. The Secretary of War, on November 13, 1898, referred the papers to the accounting officers of the Treasury with the certificate required by the act of March 3, 1885, that the horse was “ reasonable, useful, necessary, and proper for an officer while in quarters, engaged in the public service, in the line of duty.” On January 26, 1897, the Auditor for the War Department allowed his claim for $200, which was accordingly paid to him. On May 28, 1897, the Assistant Comptroller of the Treasury, upon his own motion, revised the settlement and disallowed the claim, for the reason that it was not shown that the loss was due to any exigency or necessity of the military service, and that the indications were that there was fault or negligence of some one; if not of the owner, it was the one who had the horse in charge, and the owner was responsible for the negligence of his rep *247 resentative. Thereupon the amount disallowed was refunded to the Government by the plaintiff in installments between July 1 and November 1, 1900, and on September 5, 1905, this suit was instituted to recover the amount which plaintiff was thus required to restore to the Government.
. Defendants’ counsel raises the question of the jurisdiction of the court to consider the act of March 3, 1885, 23 Stats., 350. We do not deem it necessary to pass upon that question because, we hold, that said act is not involved in this case.
He further contends that plaintiff’s claim is barred by the statute of limitations. He argues that if the court has jurisdiction of this suit under section 3482 of the Revised Statutes as amended by the act of June 22,1874,18 Stat. L., 193, or the act of March 3, 1885, supra, the claim is now barred by section 1069 of the Revised Statutes, as the cause of action accrued on February 15, 1889, when the horse was injured, and the suit was not brought until September 5, 1905, over 16 years afterwards.
We do not agree with this contention. It is true, as shown by the findings, that the horse died in 1889; that in 1897 the Auditor for the War Department allowed plaintiff $200 in payment for same; that thereafter the Comptroller of the Treasury, in May, 1897, reversed the decision of the auditor in allowing payment for the horse; that during the year 1900 plaintiff refunded the $200 in installments, the last payment being made October 31, 1900, when the account was closed. On the other hand, plaintiff’s contention is that he could not bring a suit to recover the full amount of the $200 which had been charged back against him until it had been fully restored to the Treasury. At that time, and that time only, a cause of action accrued for the amount so refunded, and on that cause of action he brought his suit on September 9, 1905, a few days over one year before the statute of limitations could begin to run. It is elementary that in cases of mutual accounts the statute of limitations commences to run from the date of the last item on either side. 2 Wood Lim., 714.
*248 This brings us to a consideration of the case upon its merits. Plaintiff institutes his suit under the act of March 3, 1849 (9 Stats., 414), as amended by the act of June 22, 1874, supra, and contends that this action may also be sustained under section 3482 of the [Revised Statutes, and the act of March 3, 1885.
The act of June 22, 1874, above cited, is in these words:
“ That the first section of the act of March 3d, 1849, providing for the payment for horses and equipments lost by officers or enlisted men in the military service, shall not be construed to deny payment to such officers or enlisted men for horses which may have been purchased by them in States in insurrection; and payment in any case shall not be refused where the loss resulted from any exigency or necessity of the military service, unless it was caused by the fault or negligence of such officers or enlisted men.”
To recover under this section it must appear that the loss resulted from an “exigency or necessity of the military service, unless it was caused by the fault or negligence of such officers or enlisted men.” In this case no exigency of the military service is involved, but as will hereafter be shown, we think, the injury and death of the horse resulted through the “fault or negligence” of its owner, or the enlisted man who had it under his care and supervision.
Section 3482 of the Revised Statutes is in the following language:
“Any field, or staff, or other officer, mounted militiaman, volunteer, ranger, or cavalryman, engaged in the military service of the United States, who sustains damage without any fault or negligence on his part, while in the service, by the loss of a horse in battle, or by the loss of a horse wounded in battle, which dies of the wound, or which being so wounded is abandoned by order of his officer and lost, or who sustains damage by the loss of any horse by death or abandonment because of the unavoidable dangers of the sea, when on board a United States transport vessel, or because the United States fails to supply transportation for the horse, and the owner is compelled by the order of his commanding officer to embark and leave him, or in consequence of the United States failing to supply sufficient forage, or because the rider is dismounted and separated from his *249 horse and ordered to do duty on foot at a station detached from his horse, or when the officer in the immediate command orders the horse turned out to graze in the woods, prairies, or commons, because the United States fails to supply sufficient forage, and the loss is consequent thereon, or for the loss of necessary equipage, in consequence of the loss of his horse, shall be allowed and paid the value thereof, not to exceed two hundred dollars.”
It will be observed that nowhere in this statute is compensation for the loss of a horse provided for under circumstances similar to the case before us. The trend of the statute is to provide payment to officers for horses lost, captured, starved, or killed in the exigencies of war without any fault or negligence of their owners, and where the Government was unable to protect them. Nowhere is it even intimated in the act that an officer should be paid for his horse that is kept in the quietude and comforts of a Government stable and fed, curried, and cared for by a cavalryman under the pay of the Government, should such horse by getting his feet or neck tangled in a halter, or by being kicked by another horse, or being choked or foundered by overfeeding, or by being fatally crippled as in the case before us, so that any or all of them should die, even if such casualties did not result through any fault or negligence of their owners. We can not conceive that it was the intent of the Congress in the act above quoted, to require the Government to pay cavalry officers for the loss of horses under the conditions we have enumerated. If such were the intention of the legislative body, it is but reasonable to presume that such casualties, which necessarily frequently occur, should have been provided for in the act.
The act of March 3, 1885, does not repeal section 3482 of the Revised Statutes, which provides payment only for horses lost, starved, stolen, or killed in the military service under the conditions therein named, but it is silent as to horses, and in terms includes such property only as officers are required to carry with them as soldiers in the line of duty in the field. While it is true that horses, strictly speaking, are “ property,” yet it is hardly reasonable to con- *250 elude that so long as section 3482, Kevised Statutes, was still in force at the time of the adoption of the act of 1885, it is not reasonable that the Congress would have provided in the later act that it 11 shall not apply to losses sustained, in time of war or hostilities with Indians.” In time of war, and especially in conflicts with Indians, horses would be most needed, and if killed or captured without negligence or undue carelessness on the part of their owners, would be paid for by the Government and would be compensated for under section 3482, Revised Statutes; but, on the contrary, they are, in specific terms, ruled out under the act of 1885. Therefore, reading the two acts in pari materia, we are forced to conclude that the Congress did not intend to provide payment for horses lost, killed, captured, or injured under the term “ property ” which is contained in the act of March 3, 1885.
Furthermore, it is not shown by the findings that the safety of the mare was properly provided for by the keeper, who was the representative and agent of the plaintiff and for whose conduct and acts he is responsible. Had no bar been placed across the end of the stall, or had more than one bar been so used, or had the animal been tied with a halter to the manger in the stall, which is the usual method of providing safety for a horse, no injury, such as resulted in this case, could have occurred. It is not sufficient for plaintiff to aver that he was without fault or negligence in the care of his horse when he allowed a death trap like a single bar to be placed across the rear end of a stall in a stable, which any person competent to care for a horse must have known was dangerous, and which proved to be so in this case. We can not conceive that the Congress intended to pay a man for a mount he had furnished, feed the same for him and care for it when it is injured or sick, and then pay for it when it dies under the circumstances involved in this case. For these, as well as for other reasons we have stated, recovery can not be had under the act of June 22, 1874, section 3482 of the Revised Statutes, or the act of 1885, which does not apply in this case, and consequently the petition must be dismissed, which is so ordered.