Campbell, Chief Justice,
delivered the opinion of the court:
This case was heard and the petition dismissed. Several other cases involving losses of horses were pending. When a motion for a new trial was made in this case all of said cases were sent to the calendar to be heard with this case upon a question common to all, that question being the right of the officer to recover for the loss of his horse under the allegation that the loss resulted from an “exigency of the military service ” and without the fault or negligence of the officer. The claim was predicated upon the act of 1849, hereafter quoted, or section 3482 of the Revised Statutes, as amended by the act of June 22, 1874, hereafter quoted, and was rested upon the decision of this court in the Hardie case, 39 C. Cls., 250.
Upon the hearing of the motion for a new trial the plaintiff renewed his original contention, but asked leave to amend his petition so as to claim a right of recovery by virtue of the act of March 3, 1885, 23 Stats., 350, in the event the court adhered to its view that a recovery could not be had under plaintiff’s said original contention.
The court’s opinion in the former hearing was delivered by Judge Downey. Because he rendered an opinion while Comptroller of the Treasury upon the effect of the act of *177 1885 in cases of said, kind Judge Downey has requested that some other member of the court deliver its opinion on the questions raised by said motion.
We shall confine our discussion to the questions common to all of said cases without regard to special facts applicable to particular cases, and those questions are upon the right to recover under the statutes applicable to losses of horses in the military service.
They call for a review of the applicable statutes and former decisions of the court. It may be added here that the question now presented involves a determination of whether the ruling in the Hardie case, 39 C. Cls., 250, shall be followed in so far as it recognizes that the act of 1874 was operative when that case was decided. Our comments upon that case are to be confined to said point. Before considering the decisions we deem it proper to state our views of the statutes bearing upon the right of claimants to recover for the loss of horses in the military service. The general subject of losses of horses in the military service has from a very early date had the consideration of Congress. The acts may be referred to as follows:
The first act was that of May 12, 1796, 1 Stat., 463, which provided for loss of horses killed in battle only and carried a limitation. The act of July 5, 1797, 1 Stat., 527, continued this first act in force for an additional period. The act of April 9, 1816, 3 Stat., 261, was applicable to “the late war with Great Britain” and was in part along lines similar to the act of 1849. It was provided therein that no claim thereunder should be “ allowed or paid ” unless “ exhibited” within two years after the passage of the act. The act of March 3, 1817, 3 Stat., 397, construed one section, and in this respect “ extended ” “ the provisions of this act and the act to which it is an amendment.” The act of April 20, 1818, 3 Stat., 466, recognized the limitation in the act of 1816 as terminating rights thereunder and transferred the jurisdiction of all claims remaining on file but unacted on at the expiration of the two-year limitation. The act of March 3, 1825, 4 Stat., 123, gave an additional right to present certain unadjusted claims under the act *178 of 1816 during the nine months following the passage of the act. The act of February 19, 1833, 4 Stat., 613, having particular reference to campaigns against the Indians on the frontier, provided for compensation for horses lost bordering closely on many of the provisions found in the act of 1849. Its operation was specifically limited to three years from and after its passage, and hence expired February 19, 1836. But before the expiration of that period another act was passed, June 30, 1834, 4 Stat., 726, providing for payment of losses in the military service in campaigns against the Indians, which more nearly approached the provisions of the act of 1849. There was no limitation as to time in this act.
This was followed by the act of January 18, 1837, 5 Stat., 142, which provided for compensation for losses which had been sustained in the military service since June 18, 1812, or should thereafter be sustained in such service. It expressly repealed the acts of 1833 and 1834 referred to, and in the concluding section provided that it should remain in force until the close of the next session of Congress. By the act of July 7, 1838, 5 Stat., 288, the act of 1837 was “continued in force for two years from the end of the present session of Congress.” By the act of February 27, 1841, 5 Stat., 414, the act of 1837 was “ further continued in force for two years from the end of the present session of Congress.” An act approved August 23, 1842, 5 Stat., 511, amended the act of 1837 in some respects, providing, among other things, for an appeal from the Third Auditor, who had theretofore had exclusive jurisdiction, to the second comptroller, “whose decision shall be conclusive.” The act of March 3, 1843, 5 Stat., 648, continued the act of 1837 in force “ for two years from and after the end of the present session of Congress: Provided, That at the end of the last aforesaid term of two years all claims intended to be provided for by said act shall be forever barred and irrecoverable before any tribunal whatever.” By the second section of an act approved June 15, 1844, 5 Stat., 673, the act of 1837 was continued in force for two years from and after the limitation provided in the act of March 3,1843. By the act of March 2, 1847, 9 Stat., 154, the act of 1837 and *179 amendatory acts were continued in force for “two years from and after the third day of March, 1847.” At the expiration of this period Congress seems to have concluded to let the act of 1837, five times extended and limited, die by virtue of the last limitation and passed the act of March 3, 1849.
Said act of March 3, 1849, 9 Stats., 414, was carried into the Bevised Statutes with some alteration of arrangement of its sections, hereafter mentioned. The first section of that act, with some omissions, became section 3482 of the Revised Statutes as follows:
“Sec. 3482. Any field, or staff, or other officer, mounted militiaman, volunteer, ranger, or cavalryman, engaged in the military service of the United States, who sustains damage without fault or negligence on his part while in the service, by the loss of a horse in battle, or by the loss of a horse wounded in battle, which dies of the wound, or which, being so wounded, is abandoned by order of his officer and lost, or who sustains damage by the loss of any horse by death or abandonment because of the unavoidable dangers of the sea, when on board a United States transport vessel, or because the United States fails to supply transportation for the horse, and the owner is compelled by the order of his commanding officer to embark and leave him, or in consequence of the United States failing to supply sufficient forage, or because the rider is dismounted and sepai’ated from his horse and ordered to do duty on foot at a station detached from his horse, or when the officer in the immediate command orders the horse turned out to graze in the woods, prairies, or commons, because the United States fails to supply sufficient forage, and the loss is consequent thereon, or for the loss of necessary equipage, in consequence of the loss of his horse, shall be allowed and paid the value thereof, not to exceed $200. But any payment which is made to anyone for the use and risk, or for forage, after the death, loss, or abandonment of his horse shall be deducted from the value thereof, unless he satisfies the paymaster at the time he makes the payment, or thereafter shows, by proof, that he was remounted, in which case the deduction shall only extend to the time he was on foot. And any payment made to any person above-mentioned on account of clothing to which he is not entitled by law shall be deducted from tlie value of his horse or accouterments.”
The next act which we have found bearing upon the subject is the act of March 3, 1873, 17 Stat., 500, which was *180 that “all claims for horses lost prior to January 1, 1872, shall be presented by the end of said fiscal year.” Then followed the act of June 22, 1874, 18 Stats., 193, as follows:
“Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the first section of the act of March third, eighteen hundred and forty-nine, providing for the payment for horses and equipments lost by ofiieers or enlisted men in the military service shall not be construed to deny payment to such officers or enlisted men for horses which may have been purchased by them in States in insurrection; and payment in any case shall not be refused where the loss resulted from any exigency or necessity of the military service unless it was caused by the fault or negligence of such officers or enlisted men.
“ Sec. 2. That no claims under said section or this amendment thereto shall be considered unless presented prior to the first day of January, eighteen hundred and seventy-six.”
This was followed by two other acts passed in 1883 and 1888. The act of January 9, 1883, 22 Stats., 401, was entitled “An act to extend the time for filing claims for horses and equipment lost by officers and enlisted men in the service of the United States, and for other purposes,” and is as follows:
“Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the time for filing claims for horses and equipments lost by officers and enlisted men in the military service of the United States, which expired by limitation on the thirty-first day of December, eighteen hundred and seventy-five, be, and the same is hereby, extended to one year from and after the passage of this act; and that all such claims filed in the proper department before the passage of this act shall be deemed to have been filed in due time, and shall be considered and decided without refiling.
“ Sec. 2. That all claims arising, under the act approved March third, eighteen hundred and forty-nine, entitled ‘An act to provide for the payment of horses and other property lost or destroyed in the military service of the United States,’ and all acts amendatory thereof, which shall not be filed in the proper department within one year from and after the passage of this act shall be forever barred, and shall not be received, considered, or audited by any department of the Government.”
*181 The second section of the act of August 13, 1888, 25 Stats., 437, is as follows:
“ Sec. 2. That the limitation heretofore imposed by law on the presentation by officers or soldiers of claims for the loss of horses and equipments in the military services during the late war is hereby suspended for the period of three years.”
Except as the acts of 1873, 1883, and 1888 shed light upon the act of 1874 and may concern some decisions subsequently made, they are not involved here. The question to which we address ourselves is the meaning and effect of the act of 1874. That act declares that the first section of the act of 1849 (1) “shall not be construed” to deny payment for horses purchased “in States in insurrection;” (2) that “payment in any case shall not be refused where the loss resulted from any exigency or necessity of the military service” not caused by the fault or negligence of the officer or enlisted man seeking compensation. It is manifest that the first clause refers to claims which had already arisen because of its reference to horses which had been purchased during the Civil War, then nearly 10 years past. It prescribes a rule of construction of the act of 1849, or its first section, as applicable to a specific class of claims. In effect the first clause is a legislative construction of the first section of the act of 1849 in its relation to the claims. Whether the denial of such claims for losses had been made by the third auditor because it was supposed that the purchases had been violative of the nonintercourse acts prevailing during the Civil War or because of some other reason deemed sufficient it is not necessary for us to inquire. As late as September, 1877, the Secretary of War advised the accounting officers that they should not require proof of loyalty in claims under the act of 1849. 15 Ops. Atty. Gen., 652. There must have been some denial of the claims for some reason which induced the Congress to furnish a legislative construction of the act under which the claims were propounded, and Congress did furnish the legislation, making it applicable to the claims we have mentioned.
The second clause of the act is broader. “ Payment in any case shall not be refused where the loss resulted from any exigency or necessity of the military service ” is the language *182 used, and if that language be engrafted upon the first section of the act of 1849 as permanent legislation the necessary effect would be “ to do away with the limited specification of cases in the act of 1849.” Thomas's case, 16 C. Cls., 522, 526. But the act of 1874 has two sections, and by the second section it is provided “ that no claim under said section or this amendment thereto shall be considered unless presented prior to the first day of January, eighteen hundred and seventy-six.”
What effect has section 2 upon the act itself? Of course, the entire act must be considered, and we find a statute which in one section provides legislation, a part of which could be given prospective operation, followed by a section which according to its letter restricts the act, as well as the first section of the act of 1849, to a limited period. When the act provides that no claim shall be “considered” unless “presented” within a stated time, we can not restrict the required consideration and presentation to the accounting officers and at the same time extend a portion of the act to a proceeding in court.
The act forbids consideration of claims not “presented” prior to January 1,1876, and that inhibition applies whether the claim is “considered” in court or by the accounting officers. If the first section authorizes this court to take jurisdiction as upon “ a law of Congress ” in the matter of the claims therein mentioned, the second section of the same act fixes the limit of time within which the claims shall be presented and forbids their consideration unless presented within that time. It is not unusual for Congress to limit the period within which classes of claims may be presented or considered. Said acts of 1873, 1883, and 1888 furnish illustrations of said fact. Prominent among acts of the kind referred to applicable to this court is the captured or abandoned property act, whereby Congress recognized a right and “ granted a privilege.” Suits under that act were limited to a period expiring at the end of two years after “ the suppression of the rebellion.” No suits could be brought thereafter, as is clearly shown by numerous decisions.
Another act of said kind was the Indian depredation act, which contained many limitations, among others that where *183 a depredation was alleged to have been committed prior to July 1, 1865, the claim could not be considered if it had not been presented to the Secretary of the Interior, the Congress, or some other body authorized to consider it, and we have had a number of cases in which the limitation was applied.
The conclusion is irresistible that the act of 1874 authorized the presentation of claims such as were contemplated by the act for the limited period stated in the second section of the act, and the claims must have been presented within that period. Suits brought in time under the captured or abandoned property act were considered in many instances after the bar of the act had fallen, and claims “ presented ” in time could be considered after the bar of the act of 1874 had fallen.
Reference to the act of 1849 shows that by sections 3 and 4 thereof provision is made for the adjustment of claims under the act by the third auditor and for “adjudications” and “judgments” by him. Said act continued in force until it was carried into the Revised Statutes with some alteration of arrangement. The Revised Statutes were confined to statutes which had been enacted prior to December 1, 1873, and acts passed subsequently to that date were to be given “ effect as subsequent statutes and as repealing any portion of the revision inconsistent therewith.” Section 5601, Revised Statutes.
The act of June 22, 1874, does not mention section 3482 of the Revised Statutes, and does mention the first section of the act of 1849, for the obvious reason that when the bill was introduced in Congress, and probably when it' -was enacted into law, the revision of the statutes had not been enacted. The act adopting the Revised Statutes was enacted on June 22, 1874, but the revision carried the first section of the act of 1849 into the Revised Statutes as section 3482, and it follows that the act of 1874 amended, for the reasons stated, section 3482 of the Revised Statutes, but only so far as said section had any bearing on the subject matter of the act of 1874.
Section 277 of the Revised Statutes contains the revision of sections 3 and 4 of the act of 1849. A reason for their *184 revision may be found in the act of July 28, 1866, 14 Stats., 327. Bogert's case, 3 C. Cls., 22. It follows that while claims arising before the revision must have been presented in the first instance to the third auditor (Grant case, 1 C. Cls., 61, 66), the revision itself by section 277 made a material change so far as the jurisdiction of this court is concerned, and claims under the act of 1849, as revised in the revision, could be presented in the first instance to this court; and this court could take jurisdiction of a claim under the act of 1849 or section 3482 of the Revised Statutes because the claim was founded upon a law of Congress.
What, then, is the effect of the second section of the act of 1874 upon claims arising under the first section of the act of 1849 or section 3482 of the Revised Statutes ? Literally construed, said second section inhibits the consideration of claims which shall not have been “ presented ” prior to January 1, 1876. “No claims under said section” (the first section of the act of 1849) “shall be considered unless presented” within the time stated, is the language of an act, which at the same time authorizes by the rule of legislative construction of the prior act and a broadening of the light theretofore given claimants, recoveries which could not have been had but for the act. The application of a literal and too strict construction of said section leads to a singular condition in which the statute of 1849 or the corresponding sections of the Revised Statutes would be left. If the first section of that act — section 3482, Revised Statutes — was repealed by said provision, the remaining sections of the act of 1849 to be found in the Revised Statutes continued in effect, and while in that state of the law provision would be made for a number of losses, in some cases by civilians (sec. 3487, Revised Statutes), losses sustained in battle would not be provided for. The long-established policy of Congress to provide for loss of horses in battle, which culminated in the act of 1849, would be thus struck down in 1874, while minor features of the act of 1849 would be continued in existence.
We must recognize the right of Congress to deal with the subject as they deem proper, and must give effect to the law *185 as they enact it, but we are not confined to an interpretation which would carry the statute beyond its purposes or the intention of the lawmakers where one can be found that gives full effect to the law as passed.
It is undoubtedly the duty of the court to ascertain the meaning of the legislature from the words used in the statute and the subject matter to which it relates, and to restrain its operation within narrower limits than its words import if the court are satisfied that the literal meaning of its language would extend to cases which the legislature never designed to embrace in it.” Lessee of Brewer v. Blougher, 14 Pet., 178, 198.
That construction is to be given a statute which will carry into effect the intention, purpose, and object of the lawmakers. Leavenworth, etc., R. R. Co. v. United States, 92 U. S., 733, 740; Northern Secur. Co. case, 198 U. S., 197, 358; United States v. Oregon R. R., 164 U. S., 526, 539.
The purpose of the act of 1874 is obvious when its history is examined. It bears internal evidence of the fact that it was making provision for claims for loss of horses during the Civil War. The provision regarding horses purchased in the insurrectionary States can have no other relation than to said war. The report of the House committee relative to the proposed bill shows the purpose in view was to allow payment for horses lost during that war. A reason for the act may be found in the construction which the accounting officers gave to the act of 1849 if we may adopt the view of Judge Nott in the New Mexico horse cases, 16 C. Cls., 550. The court was there considering a special act of Congress conferring jurisdiction upon this court of certain claims on account of losses of horses and equipment during the War of the Kebellion. It may be suggested here that it is significant that Congress thought it necessary to transmit these claims by special act if the act of 1874 could have been invoked.
Speaking of the act of 1849, Judge Nott said (p. 555) that the official zeal of the accounting officers had in many instances applied the most extraordinary technical renderings to the words of the statute, and that Congress have come to the aid of soldiers in sweeping away such impediments. The *186 act of 1873 had required claims for horses lost prior to the 1st day of January, 1872, to be presented before the 30th day of June, 1874. The act of 1874 required presentation of said claims before January 1,1876. The act of 1883 allowed another year from the date of that act for the presentation of such claims, and the act of 1888 suspended the limitation which had been “imposed by law” in the presentation of claims for the loss of hoi’ses “ during the late war ” for three years longer. The said acts are in pari materia. The act of 1888 refers specifically to losses during said war; the act of 1883 declares that the time for filing said claims “ expired by limitation on the 31st day of December, 1875,” and it is significant that the last-named date is the time limited for presenting claims by the act of 1874.
The Congress were therefore legislating with regard to a specific class of old claims. The first clause of the act refers to horses purchased in States in insurrection, and as to claims for the loss of such horses it is declared that the act of 1849 shall not be construed to deny payment because of their purchase as stated. The next clause comprehends claims for horses purchased as stated, and all other claims for losses in the class to which the legislation is directed. We can not say that the limitation of the act refers .to the claims for loss of horses which had been purchased in said States and does not refer to a subsequent part of the same sentence in the act which broadens a right of recovery. We have no right to segregate these clauses in the act, but must give effect to the whole of it. Blair v. Chicago, 201 U. S., 400, 463; Market Co. v. Hoffman, 101 U. S., 112, 115. By construing the act of 1874 with reference to its subject matter and in view of the considerations to which we have adverted, a proper conclusion can be reached that effectuates the entire act. That conclusion is that the legislation was intended to apply to a specific class of claims which had already arisen and to provide rules under which said claims could be determined. They belong to the same general class that were afterwards referred to in the act of 1888 as claims for losses “ during the late war.”
*187 It was clearly competent for Congress to afford a broader measure of relief for such claims than they could have under the act of 1849 alone. By confining the act to the particular claims we can give full effect to it. As to said old claims, the act is applicable, but as to claims arising subsequent to January 1, 1876, the act did not apply. It expired on the 31st day of December, 1875. The act of 1849 was the law under which claims for losses could be presented, and by the act of 1874 Congress prescribed a rule of construction under which the payment of the specific class of claims could be secured. That rule was a broader, a more liberal one than the claimants could have had under the act of 1849, but none of the claims so provided for could be considered unless presented within the period limited by the act. It was thus an extension of a right to present claims, and it limited the time for presenting them, and at the same time it prescribed a rule for their consideration. For the purposes of the act of 1874 and the claims contemplated by that act a stated construction was to be adopted, but when the time for presenting those claims had expired the act could not affect other claims.
For purposes of the act of 1874 section 3482 of the Revised Statutes was amended, but after the act of 1874 had expired by its limitation section 3482 of the Revised Statutes continued in force unaffected by the act of 1874. The last-named act was not intended to be permanent legislation. Relating as it did to a specific subject, the act can be accepted as an exception to the general act on the subject of losses of horses and as affecting the latter only to the extent of any repugnancy between the two. Crane v. Reeder, 22 Mich., 322, 334; Wood's case, 16 Pet., 342, 363. Section 3482 had general and prospective application, and the act of 1874 applied to special cases for a definite period. In Rogers' case 185 U. S., 83, 36 C. Cls., 266, the following language from the opinion in Crane v. Reeder, supra, is approved: “ Where there are two acts or provisions, one of which is special and particular, and certainly includes the matter in question, and the other general, which, if standing alone, would include the same matter and thus conflict with the special act or provision, the special must be taken as intended to constitute an *188 exception to the general act or provision, especially when such general and special acts or provisions are contemporaneous, as the legislature is not to be presumed to have intended a conflict.” Certainly when the exception or amendment, be it called the one or the other, had expired by its own limitation the general law on the subject was not affected unless the intention to limit or repeal the general law is plain. For a distinct purpose a right was created and limited in duration, and during the limited period it broadened a prior right as applicable to a specific class of claims, but when it ceased to be operative on December 31, 1875, the older act to which it referred continued in full force and effect as brought forward into the Revised Statutes. Further extensions of time for presenting claims belonging to said class were made by the acts of 1883 and 1888 for the periods limited by them respectively; and if it be conceded that said acts revived the act of 1874 it was revived for limited times and for a special purpose.
We turn our attention to the decisions of the court relative to said question. Several cases are cited — namely, Thomas's case, 16 C. Cls., 522; Irby's case, 18 C. Cls., 261; Hardie's case, 39 C. Cls., 252; and Cox's case, 41 C. Cls., 86. We shall consider each of them.
The Thomas case, decided in 1881, was an action brought in 1880 to recover for the loss of a horse during the Civil War. By an amendment to the petition it was made to appear that the claim had been presented to the Third Auditor in June 1875, and he had not acted thereon. The petition as amended accordingly averred: “That this claim was prior to the 1st day of January, 1876, to wit, on the 21st day of June, 1875, presented to the Third Auditor, who has not acted upon the same.” This quotation is made to emphasize the fact of its materiality in the court’s decision. Answering the contention that the second section of the act of 1874 barred consideration of the claim “unless presented” prior to January 1, 1876, that the claim was not presented, and hence that the court was without jurisdiction, the court says: “This point is disposed of by an amendment to the petition allowed by the court averring that the claim was *189 presented to the Third Auditor on the 21st June, 1875.” It was held that said presentation kept the claim alive and was sufficient to meet the requirement of the statute. It is to be noted that suit was brought well within sis years from the t.me the claim was presented.
Upon the facts found there could be no doubt of the court’s jurisdiction of the case, and when the facts of the case are kept in view the conclusions of the court are quite clear. Waiving any consideration of the effect of said second section, the court construed the act of 1874 as doing away with the limited specifications of cases in the act of 1849, and held that the court had jurisdiction because the claim was founded upon a law of Congress, and, further, that the revision of the statutes whereby the third and fourth sections of the act of 1849 became section 277 of the Revised Statutes made a material change in the procedure which had formerly obtained and did not oust the court’s jurisdiction. The court therefore declares that “in every view we affirm our jurisdiction of claims of this kind ” — an expression which is entirely consistent with the view that said claim was of the kind” contemplated by the act of 1874; was a claim originating in the Civil War, and under the facts had met all the requirements of both sections of the act of 1874. There could be no doubt of the court’s jurisdiction in a case falling within section 3482, because of the effect of section 277, nor could there be any doubt of the court’s jurisdiction under section 3482 as amended by the act of 1874 so long as the statute of limitations of six years was not a bar. The court evidently had in mind the distinction between jurisdiction and a right of recovery under the facts, because after affirming its “jurisdiction of claims of this kind” the court concludes with the significant statement: “Whether the claim-mt has a case falling within that jurisdiction we leave for future decision whenever the case shall be properly brought before us.” [Italics ours.] Certainly it would not be affirmed that the Thomas case construed the act of 1874 as applicable to any case except it were of “ the kind ” there considered when the court expressly waived consideration of the second section of that act in stating that “ this point is disposed of by an amendment of the petition.”
*190 Claimant’s counsel in this case, who was also counsel in the Thomas case, very properly says in his brief: “ The point being out of the case the court did not decide it, and it is hard to see how the decision of the case can be cited as bearing upon a point not ip it.”
The Irby case resulted in a dismissal of the petition. It was brought in this court on the 19th day of June, 1880, and involved a claim originating in the Civil War. It went off because of want of proof of ownership, but it was added in the opinion that if claimant had a horse it was not lost by any exigency of the military service. That case does not mention or discuss the second section of the act of 1874. The court describes the suit as one brought under the act of 1849 as amended by the act of June 22, 1874, and says that in the Thomas case “ we considered the power of this court to take jurisdiction, under the above-mentioned acts, of claims of this description, and affirmed the right of soldiers to recover here payment for losses of horses ‘ in any case ’ where, without fault or negligence on their part, ‘ the loss resulted from any exigency or necessity of the military service.’” The Chief Justice wrote the opinions in both of said cases, and his reference to “ claims of this description ” in the Irby case evidently has relation to the “ claims of this kind ” considered in the Thomas case. The effect of said second section is not considered in' the Irby case, and under its facts it was one of the claims alleged to have arisen during the Civil War. It was not necessary to consider said second section, because under no condition could there have been a recovery under the facts.
The Hardie case was decided in 1904 and involved the loss of a horse by an officer by reason of injuries sustained on a transport bound for Manila in August, 1900. The court thus states the case: “The claim is made under section 3482 of the Revised Statutes as amended by the act of June 22, 1874, 1 Supp. Rev. Stat., 37. It is contended by the counsel for the defendants that no recovery can be allowed in this case because of the provisions of the act of January 9, 1883.” The court then proceeds to consider and answer the said contention. It cites and quotes from the Irby and *191 Thomas cases — from the former as to what the claimant was required to prove and from the latter the expression relative to the meaning of the act of 1874 there considered.
The Cox case was decided in 1906 and involved the loss of a horse which had been killed during the Cuban War under somewhat peculiar circumstances. The claimant was an assistant surgeon and a mounted officer on duty with his regiment in the trenches before Santiago. Becoming frightened by a raging storm on the night of July 11 the horse had escaped from the picket line and wandered into a field lying between the United States troops and the Spanish army. “While there it was mistaken by our troops as belonging to the enemy and was shot and wounded so severely that it was afterwards killed by order ” of the colonel commanding the regiment. The opinion states: “ The claimant seeks to recover in this case for the loss of the horse under section 3482 of the Revised Statutes, as amended by the act of January 22, 1874, 1 Supp. Rev. Stat., 37.” It was held that the horse was lost in an exigency of the military service and the Hardie case was followed. It is not apparent why the claimant could not have recovered under the act of 1849 without the aid of the act of 1874. Powell’s case, 1 C. Cls., 400.
It is manifest that in neither the Hardie case nor the Cox case is there any discussion of the second section of the act of 1874. In the former the contention made and considered turned upon the act of 1883, and in the latter case the same contention is considered, with the added suggestion that the act of 1885 affected section 3482 of the Revised Statutes. While both cases refer to section 3482 as amended, the reference is alike in each case, as we have quoted, to that section “ as amended by the act of June 22, 1874, 1 Supp. Rev. Stat., 37,” except that the Cox case gives the date January 22 instead of June. Both references are the same, to “ 1 Supp. Rev. Stat., 37.” When that reference is examined it will be seen that the supplement does not set out the second section of the act of 1874, but states in brackets that it was “ superseded ” by the acts of 1883 and 1888. The supplement to the Revised Statutes was authorized in 1880, but it has not the *192 effect of the authorized revision, which became effective as of December 1, 1873.
The Hardie case contains no reference to said second section. It does not consider that section. The defendants did not refer the court to the second section, but did contend that the court’s jurisdiction was ousted by the act of 1883. It was apparently assumed that “1 Supp. Rev. Stat., 37,” contained all that was material in the act of 1874, but that such an assumption is erroneous is clearly seen when the whole act is read. We therefore find that the Thomas case expressly pretermitted any consideration of the effect of said second section because not involved under the averments of the amended petition; that the Irby case did not consider it; and that both of these cases involved claims which arose during the Civil War and were of the kind or class which Congress had in contemplation when the act of 1874 was before them and was passed. The Cox case followed the Hardie case, which was rested upon the Thomas and Irby cases but involved a claim which was not of the kind or class contemplated by the act of 1874 and involved in the Thomas and Irby cases.
Many judgments have been awarded by this court upon claims for loss of horses caused by some exigency of the military service, and these judgments have been awarded upon the authority of the Hardie case. In the instant case the judgment was asked because of that case. Shall the Hardie case be followed ? It is forcefully argued by claimant’c counsel that the principle of stare decisis should be applied, and it must be recognized as involving a serious duty to overrule a decision so long followed. But no property right is involved and no vested right is affected by a ruling in this case that differs from that in the Hardie case. It has been said that an opinion is no authority for what is not mentioned in it and what does not appear to have been suggested to the court rendering it. Knight v. St. Louis, etc., Co., 40 Ill. App., 471; 141 Ill., 110; Donner v. Palmer, 31 Cal., 500; Gage v. Parker, 178 Ill., 455; Larson v. Bank (Nebr.), 92 N. W., 729. But the rule of stare decisis should apply in the same court and its decisions be adhered to in *193 subsequent cases unless there is something manifestly erroneous therein. A mere doubt of the accuracy of the decision is not sufficient to authorize a departure from it after it has been long followed in similar cases. But, as said by Chief Justice Marshall, “ It is a maxim not to be disregarded that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision.” [Italics ours.] Cohens v. Virginia, 6 Wheat., 264, 399. As we have shown, the point we have to consider was pretermitted in the Thomas case; it was not material nor referred to in the Irby case. It was not suggested to nor considered by the court in the Hardie and Cox cases. In United States v. More, 3 Cranch, 159, 172, Chief Justice Marshall said, referring to a prior decision: “ No question was made in that case as to the jurisdiction. It passed sub silentio and the court does not consider itself bound by that case.”
In Snow v. United States, 118 U. S., 346, the Supreme Court declined to follow its decision in Cannon’s case, 116 U. S., 55, and assigned the reason (p. 354): “ The question of jurisdiction was not considered in fact in that case, nor alluded to in the decision, nor presented to the court by the counsel for the United States, nor referred to by either party at the argument or in the briefs.”
To the same effect is Sanges’ case, 144 U. S., 310, 321; Cross v. Burke, 146 U. S., 82, 87. Certainly said cases furnish sufficient authority for our action in the instant case.
A point is directly presented to us which was not brought to the court’s attention in prior cases, was not considered and is not mentioned in the Hardie case, and that point directly concerns the existence of the statute upon which plaintiff seeks to predicate a recovery and involves jurisdiction. We can have no doubt that if the point had been presented the court must have declared that no claim predicated upon the provisions of the act of 1874 could be considered unless presented to the court or the accounting officers prior to January 1, 1876, or presented as authorized *194 by the acts of 1883 and 1888. The language of the second section is too plain to be misunderstood when referred to the provisions of the first section. It was one act containing two sentences. It conferred rights, prescribed when they could be asserted, and expressly limited the time of their presentation. Congress declared in the act of 1883 that the period for presenting claims under the act of 1874 had expired on December 31, 1875. Shall we find that the act is still in force, notwithstanding it expired by its own limitation in 1875, so far as any presentation of claims under it was concerned? There is no rule of stave decisis, or any other rule, that can justify us in ignoring the point we have mentioned or in holding that, while it has not been mentioned before, the court must now declare that to be a law which is not a law.
It is objected upon this motion that the declaration in the court’s opinion that “ we believe the act of 1849 was intended to apply only to losses in time of war, or -other condition amounting practically to war, and not in times of peace,” is erroneous. What was said in that opinion with reference to the act of 1874 in this connection is eliminated by the view herein expressed as to the extent and operation of that act. The plaintiff’s counsel argues that nothing in any of the decisions of the department or the courts has been found suggesting that claims under the act of 1849 are limited to war losses. We have been cited to no case prior to Hardie’s case which was not referable to war times. The fact of the Philippine insurrection may have had an influence in that case. Powell's case, 1 C. Cls., 400, was decided in 1865, and Judge Nott analyzes the act of 1849, showing-eight classes of claims. Certainly he was considering claims for losses in war times; in that case he concludes that the loss was in battle. The references in the act are to “ battle,” to “impressment,” “capture,” “enemy” — all referring to war and not to peace. The first section refers to losses since June 18,1812, as well as to future losses, and the past losses were in war times, as we have shown from prior acts. The Valdez case, 16 C. Cls., 550, was decided in 1881 — twenty-six years after the Powell case, and Judge Nott again wrote *195 the court’s opinion. He treats the act as applying in time of war. He says: “The purpose of the statute was plain from the first, and its language, interpreted by its purpose, bears but one construction and leads to but one conclusion.” That purpose, he says, is illustrated by the numberless charter parties of the Quartermaster’s Department, under which transports were employed during the Civil War, namely, the “ war risk to be borne by the United States, the marine risk to be borne by the owners.” He declares that the purpose of the act, so far as it relates to officers or men furnishing their own horses, is “twofold and exceedingly simple — to enable the Government to hire horses at low rates, to apportion the risk between the officer and the Government.” He says that a similar purpose runs through all of the legislation which relates “ to this incident of warfare ” since the War of 1812. Speaking in general terms of the obligations which said statute casts upon the Government, Judge Nott states, among others, that the Government assumes “ all war risks concerning ” the horse of the soldier, and, conversely, that the owner assumes all “ ordinary risks analogous to the stipulation in the charter parties that the marine risk shall be borne by the owner's.” If what has been said does not make clear that Judge Nott’s view was that the act of 1819 relates to war or conditions of war, and that the risk which the Government takes is “war risk,” a further quotation from the opinion in Valdez case, supra, is appropriate. It is said (p. 555): “Moreover, it is manifest that if the owners of such horses had to bear military risks proper it would lead to a state of things prejudicial to the military service. Men would refuse to expose their horses or would evade doing so, and many a man who would scorn to run away on his own account would deem it a sufficient justification that he could not afford to lose his horse.” (Italics ours.) Certainly the reason assigned has no application in times of peace. Similar views are indicated in Crispin case, 16 C. Cls., 559.
In Guttman and Stuart's case, 6 C. Cls., 111; 18 Wall., 84, the Supreme Court considers a claim propounded under the second section of the act of 1849, and says (p. 89) that the *196 “ military service ”, contemplated by the second section “ is the same as that spoken of in the first section, to wit, in battle, or service as soldiers under the command of officers of the Army. The destruction, abandonment, or capture is that of the same enemy, to wit, an organized hostile force.” It is said in that case that the act of 1849 was intended as indemnity of those engaged in the actual military service, “ that is, for enlisted men while in the performance of their duties as such.” The claimants sought compensation for losses occasioned by an attack by hostile Indians while they were transporting military supplies in 1864 under contract. One of the questions presented was whether the property at the time of its capture was “in the military service.” It was held that it was not. The court says (p. 88): “A contractor or carrier is in no sense a soldier. In no just sense is he engaged in war, although he may transport the articles used in war. He carries forth and he carries back supplies and stores for those who are engaged in war, but takes no personal part in it.” In thus referring the statute to persons and property in the “ actual military service,” and denying relief because the contractor was in no just sense “ engaged in war,” the conclusion is deducible that the Supreme Court regarded the act as operative, only in cases arising from war or conditions of war. If that was the purpose and intention of the act it make no difference in its application that some of its provisions, taken by themselves, could be applied alike in times of war or of peace. The general purpose of the act must prevail.
The Hardie case can not be regarded as an authority binding upon the court upon the question of the effect of the act of 1874. That act has long since expired.
The plaintiff makes a motion to be allowed to amend his petition so as to claim under the act of March 8, 1885, 23 Stats., 350, in the event the court adheres to its ruling that he can not recover upon the claim as originally made.
We decided in Newcomber's case, 51 C. Cls., 408, that claims under the act of 1885 must have been presented to the accounting officers within two years from the occurrence of the loss, as provided in the statute. We there said that *197 “the rule must therefore be that unless the claim is presented to the proper accounting officers Svithin two years from the occurrence of the loss or destruction’ this court is without authority to afford relief.” The authorities for this ruling are reviewed in the Newcomber case. As bearing upon it we cite the Grant case, 1 C. Cls., 61, where it was contended that the claim sued upon came within the second section of the act of 1849. The court says (p. 66): “ But waiving all construction of this law, if the petitioner seeks redress under it, he must follow its provisions, and the third and fourth sections direct the manner of adjudication and point out how and where relief is to be obtained; and until a claimant shall have followed the course indicated, and been denied redress, we can not consider his claim.” (Italics ours.)
Speaking of the requirements of the act of 1885, that the Government’s liability shall be limited to such articles of personal property as the “ Secretary of War, in his discretion, shall decide to be reasonable, useful, necessary, and proper for such officers or soldiers while in quarters engaged in the public service in the line of duty,” we said in the Newcomber case, supra: “In our view the Secretary of War, or some one for him duly authorized, must make said decision before an action can be maintained. Until it is determined that the loss covers articles for the value of which the officers or enlisted man may recover, there is no basis upon which it can be affirmed that there is anything to adjudicate. To define the practice it is added that we shall therefore hold in actions hereafter brought in this court claiming under said act that petitions will be demurrable which fail to show that the articles of personal property for which indemnity is claimed have been decided by the Secretary or under his authority to be of the character prescribed by the statute. Neither the accounting officers nor this court are bound by the values as they may be ascertained or estimated by the department.”
We adhere to the conclusion announced in that case. The record in the instant case shows that the claim was never presented to the auditor, nor is the action of the quartermaster *198 general with regard to the claim at all analogous to the action taken in Newcomber’s case. There the claim was under the facts found “in legal effect presented to the auditor,” but we can not indulge a practice that would authorize the quartermaster general to determine' that the claim would not be allowed by the auditor, and, therefore, need not be presented, and then accept in this court his action as being in fact or in law a presentation to the proper accounting officer. The reason he assigns is not “ a legal excuse for not presenting ” the claim as required by the act.
By its terms the act of 1885 refers to losses in times of peace. We held in Sibley’s case, 49 C. Cls., 242, that the said act did not apply to claims for losses of horses. It was said in that case (p. 250) : “ We can not conceive that the Congress intended to pay a man for a mount he had furnished, feed the same for him and care for it when it is injured or sick, and then pay for it when it dies under the circumstances involved in this case.”
In the Cox case, supra, some doubt is apparently expressed as to whether the accounting officers have examined and audited the claim by virtue of the act of 1885, but the facts show that they disallowed the claim because of the provision of that act. It was, however, decided “that the jurisdiction of this court under section 3482 of the Revised Statutes ” was not affected by said act.
It was held by the Comptroller of the Treasury, 20 Comp. Dec., 238, that horses are not within the provisions of said act.
Since, for the reasons stated, the plaintiff’s case could not in any event be considered under the act of 1885, the motion to amend will be overruled. We do not enter into a discustion of the act of 1885, and leave its construction for cases which call therefor.
To the extent that this opinion holds that section 3482 is still in force for the purpose herein stated the former opinion herein is modified.
The motion for a new trial is overruled.
All the judges concur.